**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAYMOND ANGLIN,<br><br>          Plaintiff,<br><br>    v.<br><br>M. PRATTI, et al.,<br><br>          Defendants. | Case No. 1:19-cv-01334-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING ACTION PROCEED ONLY ON EXCESSIVE FORCE CLAIM AND DISMISSING ALL OTHER CLAIMS FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 9) |

Plaintiff Raymond Angline is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's first amended complaint, filed on October 15, 2019.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

On February 20, 2018, Plaintiff was transferred to Substance Abuse and Treatment Facility and State Prison, Corcoran (SATF) from the North Kern Reception Center to begin serving a nine year term for assault with force likely to produce great bodily injury.

On March 1, 2018, Plaintiff attended an inmate classification committee hearing (ICC) and conveyed to members that he believed he did not meet the eligibility requirements for placement at SATF Facility C. SATF is a 180-degree design prison setting designed to house the most violent offenders. Plaintiff was eligible for a 270-degree design placement which is a prison setting that is not as violent as 180-degree. Defendants L. Arias and M. Pratti acknowledged that Plaintiff was eligible

2

1   for 270-degree design placement.  "However, at the time of initial transfer from reception" center

2   "placement to a 270 was not available."

3          Plaintiff has a classification score of nineteen points.  Level II facility placement shall be

4   provided for prisoners who have a classification score of 19 to 36 points.  Instead of placing Plaintiff

5   into a Level II prison setting, he was placed in a Level IV 180-degree design prison which is the

6   highest level of facility.  Plaintiff asserts that he did not meet any of the administrative determinates

7   for placement in a CDCR 180-degree design prison setting and did not have 60 points or more for

8   Level IV placement.  Plaintiff notified Defendants Arias and Pratt that he did not meet the

9   administrative determinates for Level IV placement, and Plaintiff expressed that he was in fear for his

10  safety.  Plaintiff's concerns were ignored.

11         On August 2, 2018, Plaintiff was violently attacked by three Level IV inmates with sharpened

12  prison manufactured weapons, and suffered multiple puncture wounds.  During the attack, Plaintiff

13  yelled out for help to no avail.  The non-responding floor staff were Defendants A. Ramirez, J. Evans,

14  and R. Soto.

15         Sometime after the incident, Plaintiff was transferred to California Correctional Institution

16  (CCI).  Defendant Wilburn was located on the first floor of the housing unit, and Plaintiff and his

17  cellmate were housed on the second level of the same tier.  Plaintiff went to his cell door and looked

18  outside the window and saw Defendant Wilburn.  Plaintiff asked Wilburn "yes what's going on C/O

19  Wilburn?"  Wilburn did not respond to Plaintiff's inquiry.  However, about fifteen minutes later,

20  Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero and R. Gomez appeared at

21  Plaintiff's cell door, and Plaintiff cell door was opened by Defendant F. Duran.  Defendant Resendez

22  ordered Plaintiff to "cuff up," and Plaintiff asked "why" but turned around with his hands behind his

23  back and submitted to handcuffs.  Plaintiff was placed against the wall and Resendez ordered him to

24  spread his legs out.  Although Plaintiff complied with the order, Resendez ordered Plaintiff to "stop

25  resisting" while he grabbed Plaintiff by the back of his shirt and used his legs to sweep Plaintiff's legs

26  from underneath him causing Plaintiff to hit the floor.  Defendants I. Cavazos, J. Amaya, T.

27  Villalobos, J. Guerrero and R. Gomez joined Defendant Resendez by kicking, stomping, elbowing and

28  kneeing Plaintiff all over his body.  When one of the Defendants stated in a hushed voice "not here,

3

1  not here, get him up" Plaintiff was then pulled up to his feet.  Defendants took him to a breezeway

2  area that is out of the view of other inmates where he was violently slammed to the ground and beaten

3  by Defendants.  Defendant I. Cavazos dropped his knee onto Plaintiff's head and face repeatedly,

4  while J. Amaya repeatedly punched Plaintiff in the head and face while yelling for Plaintiff to "shut

5  the fuck up!"  Defendant Resendez gouged Plaintiff's eye leaving a permanent scar on Plaintiff face.

6  Defendants T. Villalobs, J. Guerrero and R. Gomez assisted in the attack on Plaintiff.  Plaintiff

7  contends that although Defendant Wilburn and F. Duran did not participate in the beating of Plaintiff,

8  both of them failed to intervene in the attack to stop or limit the injuries inflicted upon Plaintiff.

9       Plaintiff asserts that Defendants initiated the attack upon him because he was pursing a

10  grievance against Defendants M. Pratti, L. Arias, J. Evans and A. Ramirez for failing to place Plaintiff

11  into a level II 270 degree design prison.

**III.**

**DISCUSSION**

**A.      Classification**

15       A prisoner does not have a right to a particular classification or custody level under the Due

16  Process Clause.  See Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California

17  prisoner does not have liberty interest in residing at a level III prison as opposed to level IV prison);

18  Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (" '[A] prisoner has no constitutional

19  right to a particular classification status.' ") (quoting Moody v. Daggett, 429 U.S. 78, 88 .9 (1976)).

20       Plaintiff contends that he has a liberty interest based on the "mandatory" language set forth in

21  Title 15 of the California Code of Regulations section 3375.2.  Plaintiff's argument is not persuasive

22  because the Ninth Circuit has specifically held that the classification of an inmate at a "level IV"

23  rather than a "level III" prison does not present an "atypical and significant hardship."  Myron v.

24  Terhune, 476 F.3d at 718.  Further, the regulation does not contain any substantive predicates or

25  mandatory language with respect to administrative determinants.  Section 3375.2(a) states:

26       An inmate meeting one or more of the following administrative or irregular placement
         conditions, known as administrative determinants, may be housed in a facility with a security
27       level which is not consistent with the inmate's placement score[.]

28

4

Cal. Code Regs. tit. 15, § 3375.2(a). By use of the word "may" it simply cannot be said that an inmate with a specific classification score "can reasonably form an objective expectation" that he will be placed in a certain facility. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464-65 (1989) (finding no protected liberty interest in Kentucky regulations); Myron v. Terhune, 476 F.3d at 719 (finding that although California regulations relating to security classification contained some mandatory language, they did not eliminate all discretion of prison officials, mandate a particular outcome, or impose an atypical and significant hardship on the inmate population and therefore the regulations do not give rise to a Fourteenth Amendment liberty interest). Accordingly, Plaintiff fails to state a cognizable due process claim based on his classification.

### B. Failure to Protect

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had "a sufficiently culpable state of mind," acting with deliberate indifference. Farmer, 511 U.S. at 834. "[D]eliberate indifference entails something more than mere negligence … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Id. at 835. The prison official must "know and disregard an excessive risk to inmate health or safety." Id.

Plaintiff fails to set forth sufficient factual allegations to demonstrate deliberate indifference on the part of any named Defendant. Beyond the mere allegation that Plaintiff was misclassified and housed in a Level IV facility, he fails to set forth any other factual circumstances to demonstrate that any Defendant had knowledge of specific harm to Plaintiff. Further, although Plaintiff contends that staff did not respond to his yell for help, he fails to set forth sufficient factual allegations to demonstrate that any of the Defendants had acknowledge knowledge of the assault and intentionally failed to respond. Accordingly, Plaintiff fails to state a cognizable failure to protect claim.

///

///

## C. Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v McMillian, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 1078, 1085 (1986)). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene, but failed to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995); Cf. Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir. 1986) (reversing directed verdict for three officers where they admitted that they participated in the detaining, arrest and handcuffing of plaintiff, and plaintiff testified that he saw their faces during the beating).

///

6

1    Here, based on the allegations in the complaint, Plaintiff states a cognizable claim for

2    excessive force against Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero, R.

3    Gomez, and a cognizable claim for failure to intervene against Defendants Wilburn, and F. Duran.

4    **D.    Retaliation**

5    "Prisoners have a First Amendment right to file grievances against prison officials and to be free

6    from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim

7    v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First

8    Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse

9    action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

10   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

11   advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To

12   state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the

13   protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). Mere verbal

14   harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief

15   under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition,

16   threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.

17   1987).

18   Here, Plaintiff contends that Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J.

19   Guerrero, R. Gomez used excessive force against him because he filed inmate grievances against prison

20   officials at SATF. However, the mere fact that the alleged adverse action took place after Plaintiff filed

21   prison grievances is insufficient to establish that the exercise of Plaintiff's First Amendment rights was

22   the legal and proximate cause of the retaliation. Pratt v. Rowland, 65 F.3d 802, 807-08 (9th Cir. 1995)

23   (the timing of adverse actions alone is insufficient to establish retaliatory intent); O'Brien v. Gularte,

24   No. 18CV980-BAS-MDD, 2019 WL 77112, at *3 (S.D. Cal. Jan. 2, 2019) ("Timing alone … is

25   generally not enough to support an inference that prison officials took an adverse action against a

26   prisoner in retaliation for the prisoner's participation in protected conduct."). "[R]ather, Plaintiff must

27   allege sufficient facts to plausibly suggest a nexus between" the alleged protected activity and the

28   adverse action taken by a defendant. Rojo v. Paramo, No. 13CV2237-LAB (BGS), 2014 WL 2586904,

at *5 (S.D. Cal. June 10, 2014).  There are no allegations that any of these Defendants had knowledge of prior complaints or complaints filed against prison staff at SATF.  Plaintiff's conclusory contention that "an investigation into CDCR … E-mails will demonstrate that communications were ongoing prior to and subsequent to the sadistic attack upon Plaintiff at CCI Tehachapi" is pure speculation and does not raise a plausible inference that any Defendant had knowledge of the grievances.  Without such information, the Court cannot determine whether he states a plausible claim for relief.  Accordingly, Plaintiff fails to state a cognizable retaliation claim.

## IV.

## CONCLUSION AND RECOMMENDATIONS

Plaintiff's first amended complaint states a cognizable claim for excessive force against Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero, R. Gomez, and a cognizable claim for failure to intervene against Defendants Wilburn, and F. Duran.  The Court has previously notified Plaintiff of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's amended complaint is largely identical to the original complaint. Based upon the allegations in Plaintiff's original and first amended complaints, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support further claims for relief,  and further amendment would be futile.  See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")  Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Further, for the reasons explained above, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's excessive force against Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero, R. Gomez, and failure to intervene against Defendants Wilburn, and F. Duran; and

2. All other claims and Defendants be dismissed for failure to state a cognizable claim for relief.

1    These Findings and Recommendations will be submitted to the United States District Judge

2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21)**

3  **days** after being served with these Findings and Recommendations, Plaintiff may file written

4  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

5  Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

6  specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-

7  39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

8

9  IT IS SO ORDERED.

10  Dated:    **October 24, 2019**

11                                         UNITED STATES MAGISTRATE JUDGE