| | |
|---|---|
| RAYMOND ANGLIN, | Case No. 1:19-cv-01334-NONE-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES |
| M. PRATTI, et al., | |
| Defendants. | (ECF No. 35) |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

Plaintiff Raymond Anglin is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment for failure to exhaust the administrative remedies, filed December 30, 2020.

**I.**

**RELEVANT HISTORY**

This action is proceeding on Plaintiff's first amended complaint against Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero, R. Gomez for excessive force, and against Defendants Wilburn and F. Duran for failure to intervene in violation of the Eighth Amendment.

On March 13, 2020, Defendants filed an answer to the complaint.

After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on October 8, 2020.

1

On December 30, 2020, Defendants filed the instant motion for summary judgment for failure to exhaust the administrative remedies. On February 1, 2021, Plaintiff filed an opposition to Defendants' motion for summary judgment which was entered on the docket on February 17, 2021. Defendants filed a timely reply on February 24, 2021.

On March 9, 2021, the Court granted Plaintiff the opportunity to submit a declaration under penalty of perjury, to support his opposition, as the February 1, 2021, opposition was not signed under penalty of perjury. (ECF No. 44.) On March 22, 2021, Plaintiff filed a further opposition signed under penalty of perjury, including his declaration signed under penalty of perjury. (ECF No. 45.) Defendants filed a reply on March 29, 2021. (ECF No. 46.)

## II.

## LEGAL STANDARD

### A.  Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory unless unavailable. Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no

2

longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The failure to exhaust is an affirmative defense, and the defendant or defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. Id.

A. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). "The evidence must be viewed in the light most favorable to the nonmoving party." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

Initially, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and

generally available administrative remedies effectively unavailable to him." Id. However, the ultimate burden of proof on the issue of administrative exhaustion remains with the defendant. Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A. Summary of CDCR's Administrative Appeal Process[1]

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a). An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4). Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed. Id. If the inmate does not know the staff member's identifying information, the inmate is required to "provide

---

[1] On March 25, 2020, the grievance procedure outlined in § 3084.1, *et seq.*, was repealed effective June 1, 2020, as an emergency by the CDCR pursuant to Penal Code § 5058.3. See CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020). However, the parties do not dispute that the events alleged in the first amended complaint took place before the repeal took effect.

4

any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b). When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits. Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e). If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).

**B.     Summary of Relevant Factual Allegations of Plaintiff's Complaint**

At the time of the incident, Plaintiff was housed at the California Correctional Institution (CCI) in Tehachapi where he filed grievances. While at CCI, Plaintiff was targeted by staff for filing grievances.

On January 11, 2019, Defendant Wilburn flashed her flashlight in Plaintiff's cell. Plaintiff asked "Yes what's going on c/o Wilburn?" Defendant Wilburn did not respond. Approximately fifteen minutes later, Defendants U. Resendez, I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero, R. Gomez appeared at Plaintiff's cell door and ordered it to be opened by the tower control operator, F.

Duran. Defendant Resendez ordered Plaintiff to "cuff up." Plaintiff asked "why?" but turned around with his hands behind his back and submitted to handcuffs and was placed against the wall face first. Defendant Resendez ordered Plaintiff to spread his legs apart, and Plaintiff complied. However, Defendant Resendez ordered Plaintiff to "stop resisting!" while he grabbed Plaintiff by the back of his shirt and simultaneously used his legs to sweep Plaintiff's legs from underneath him and slammed Plaintiff to the floor. Defendants I. Cavazos, J. Amaya, T. Villalobos, J. Guerrero, and R. Gomez automatically joined Defendant Resendez in the attacking Plaintiff by kicking, stomping, elbowing and kneeing him all over his upper and lower body, while one Defendant stated in a hushed voice, "not here, not here, get him up!" Plaintiff was then pulled to his feet while stating, "why are you guys doing this to me?" I'm not resisting, You told me to spread my legs and I did it. I never resisted." Defendants pulled Plaintiff to a breezeway area that is out of view from other inmates, where he was slammed to the ground and beaten by Defendants. Defendant I. Cavazos dropped his knee onto Plaintiff's head and face repeatedly, while J. Amaya repeatedly punched Plaintiff in the head and face while yelling for Plaintiff to "shut the fuck up!" Defendant Resendez gouged Plaintiff's eyes leaving a permanent scar on his face, while T. Villalobos, J. Guerrero, and R. Gomez assisted in the attack against Plaintiff.

Plaintiff asserts that Defendants initiated the attack because he was pursuing a grievance against Defendants M. Pratti, L. Arias, J. Evans, and A. Ramirez for failing to place Plaintiff into the appropriate level prison.

**C.      Statement of Undisputed Facts**

1.      The California Department of Corrections and Rehabilitation (CDCR) uses a computer program system to electronically log and track inmate administrative appeals through all levels of review. (Declaration of E. Bega (Bega Decl.) ¶ 4; Declaration of Howard E. Moseley (Moseley Decl.) ¶ 3.)

2.      At all relevant times, CDCR and the CCI Appeals Office had an administrative process available for inmates to submit appeals. (Bega Decl. ¶¶ 2-4; Moseley Decl. ¶¶ 1-4.)

3.      The CCI Appeals Office receives, reviews, and tracks all non-medical inmate appeals

submitted for first and second-level review concerning events there.  First and second-level appeals are assigned a log number in the institutions' computer system.  (Bega Decl. ¶ 4.)

4. CDCR's Office of Appeals (OOA) receives, reviews, and maintains inmates' non-medical appeals accepted at the third and final level of administrative review.  When the OOA receives an appeal, it is assigned a third-level tracking number and entered into the OOA's computer tracking system.  Information maintained in the system includes the date the appeal was received, the appeal log number, the date the appeal is closed and the final disposition of the appeal.  (Moseley Decl. ¶¶ 2-3.)

5. Plaintiff is, and at the time of the events at issue was, an incarcerated state prisoner. (First Am. Compl., ECF No. 9.)

6. The events that are the subject of Plaintiff's claims in this action occurred at CCI on January 9, 2019.  (Id. at 38-39.)

7. Plaintiff alleges that Defendants Resendez, Cavazos, Amaya, Villalobos, Guerrero and Gomez assaulted him in and near his cell, while Defendants Wilburn and Duran were present but did not intervene.  (Id. at 13-15.)

8. Plaintiff's appeal log no. CCI-O-19-00211 was received by the CCI Appeals Office on January 23, 2019.  In this appeal, Plaintiff alleged that excessive force was used against him during the events on January 9, 2019.  The appeal was bypassed at the first level of review.  The appeal was partially granted in a second level decision dated February 20, 2019, in that an Appeal Inquiry was conducted and the matter was referred for an Allegation Inquiry to be conducted by CCI's Investigative Services Unit.  (Bega Decl. ¶ 8 & Ex. 2.)

9. Appeal log no. CCI-O-19-00211 was received by the OOA on March 29, 2019.  In a response dated May 15, 2019, the appeal was rejected because it was missing a necessary supporting document, the CDCR Form 1858 Rights and Responsibilities Statement.  The rejection note advised Plaintiff that he should take the corrective action necessary and resubmit the appeal within the timeframes specified in Cal. Code Regs. tit. 15, § 3084.6(a).  (Moseley Decl. ¶ 8 & Ex. 3 at p. 1.)

10. Appeal log no. CCI-19-00211 was received by the OOA on July 15, 2019.  In a

response dated August 14, 2019, the appeal was screened out because it had not been timely submitted to the OOA. (Moseley Decl. ¶ 9 & Ex. 4.)

      11.     Appeal log no. CCI-O-19-00358 was received by the CCI Appeals Office on January 31, 2019. In this appeal Plaintiff sought return of his personal property, clothing and shoes, or to be compensated for loss of the property. The appeal was granted in a first level response dated March 1, 2019. (Bega Decl. ¶ 9 & Ex. 3.)

      12.     Appeal log no. CCI-O-19-01035 was initially received by the CCI Appeals Office on March 11, 2019. In this appeal Plaintiff sought to have two Rules Violation Reports (RVR) guilty findings against him dismissed, and have his credits restored, because of alleged due process violations. The appeal was rejected at the second level of review on April 4, 2019 because it involved multiple issues, in that the one appeal addressed two separate RVRs. Plaintiff resubmitted the appeal, and it was cancelled at the second level on November 19, 2019, because it had not been timely resubmitted. (Bega Decl. ¶ 10 & Ex. 4.)

      13.     Appeal log no. CCI-O-19-03587 was received by the CCI Appeals Office on November 19, 2019. In this appeal Plaintiff sought to have a RVR guilty finding against him dismissed, and have his credits restored, because of alleged due process violations. The appeal was rejected at the first level of review on November 19, 2019 because it did not include a necessary supporting document, which was a copy of the RVR. (Bega Decl. ¶ 11 & Ex. 5.)

      14.     From January 9, 2019 through September 24, 2019, no other appeals by Plaintiff were received by the CCI Appeals Office. (Bega Decl. ¶¶ 7-11.)

      15.     From January 9, 2019 through September 24, 2019, the OOA received one other appeal from Plaintiff; however, it had initially been submitted to the CCI Appeals Office before January 9, 2019, and did not concern the events that comprise Anglin's cognizable claims in this action. (Moseley Decl. ¶ 10 & Ex. 5; Bega Decl. ¶ 7-11.)

### D.    Analysis of Defendants' Motion

Defendants argue that because the appeal for his claims in this lawsuit was properly screened out for failure to comply with the California Title 15 Regulations (i.e., it was untimely), he did not exhaust administrative remedies.

8

1        Here, it is undisputed that: (1) CDCR has a grievance process; (b) Plaintiff's inmate appeal log number CCI-O-19-00211 would have exhausted Plaintiff's instant claims; and (c) Plaintiff did not receive a third level review on the merits of his claims before filing this action. Therefore, the burden shifts to Plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

       In opposition, Plaintiff argues that he had sixty days in which to resubmit his appeal to the OOA, he did not receive the response dated May 15, 2019 until July 9, 2019, and he feared reprisal for filing complaints.

       As an initial matter, Plaintiff's claim that he had sixty days in which to resubmit his appeal to the OOA is mistaken. The applicable regulations clearly state that the OOA has 60 days to respond to the appeal at the third level, and an inmate has 30 days to resubmit an appeal. Cal. Code Regs. tit. 15,

       With regard to Plaintiff's claim that he feared reprisal, Plaintiff's allegations fails to meet the applicable standard. "[A] prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively unavailable, including circumstances in which a prisoner has reason to fear retaliation for reporting an incident." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018) (citing McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ). "In order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must show that (1) 'he actually believed prison officials would retaliate against him if he filed a grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.' " Id. (quoting McBride, 807 F.3d at 987). Plaintiff's argument fails to satisfy both elements.

       Although in the complaint, Plaintiff contends that Defendants attacked him because he filed prior grievances, the factual allegations are insufficient to support such contention. In opposition to the instant motion, Plaintiff merely contends that when he expressed his rights to redress the government through the grievance process, "CDCR officials has an history proven through the office of Inspector Generals use of force 2019 review of CDCR institutions and the June 3, 2020 Armstrong

9

v. Newsom motion to cease such a abuse to its class members for exercising their rights to the First Amendment." (Supp. Opp'n at 5-6, ECF No. 45.) Plaintiff further contends that he became "disturbed with a mental anguish of fear, after being assaulted and witnessing others being attack for initiation of complaints against prison officials that compel[l]ed him to grab or adopt other means and channels through which seek and obtain resolution." (Id. at 8.) In addition, Plaintiff's allegations are belied by the evidence in the record. Plaintiff continued to pursue both of his grievances against Defendants through the third level of review, which demonstrates that the grievance process remained available to him and belies a claim that he subjectively feared retaliation. Thus, Plaintiff's allegations are nothing more than generalized and speculative fear of retaliation which fails to satisfy the McBride standard.

Lastly, Plaintiff declares, under penalty of perjury, that he did not receive the May 15, 2019, response until July 9, 2019. California Code of Regulations, Title 15, Section 3084.8 states, in pertinent part, that an inmate must submit the appeal within thirty calendar days "[u]pon *receiving* an unsatisfactory departmental response to an appeal filed." Cal. Code Regs. tit. 15, § 3084.8(b)(3) (emphasis added). Thus, under section 3084.8(b)(3), Plaintiff had thirty days from the date he *received* the May 15, 2019 response to resubmit it. Defendants do not specifically dispute the possibility that Plaintiff may not have received the response dated May 15, 2019 until July 9, 2019. Rather, Defendants argue that Plaintiff's contention is not supported by admissible evidence, is conclusory in nature, and is not plausible. However, Defendants have not submitted any evidence to refute Plaintiff's contention that he did not receive the May, 15, 2019 response until July 9, 2019. Defendants submit only that it was allegedly mailed and postdated on May 28, 2019. (Moseley Decl., Ex. 4 at pp. 1-3 [rejection letter and handwritten notations stating May 15, 2019 letter mailed on May 28, 2019.) Thus, there is no evidence to demonstrate when Plaintiff actually received the May 15, 2019 response. Although Defendants argue that Plaintiff did not explain or account for the delay in resubmitting his appeal, the lack of such explanation is plausibly attributable to Plaintiff's belief, albeit mistaken, that he had sixty days to resubmit the appeal. Accordingly, Defendants have failed to demonstrate the existence of a factual dispute concerning as to when Plaintiff received the May 15, 2019 response. Therefore, the Court finds that Plaintiff has met his burden of coming forward with

some evidence showing that the generally available administrative remedies were effectively unavailable to him. Albino, 747 F.3d at 1166. If Plaintiff did not receive the May 15, 2019 notice until July 9, 2019, then his resubmission was timely. Absent evidence demonstrating a material fact dispute, this Court need not conduct an evidentiary hearing. As this Court noted in a similar case:

> If exhaustion were an element of plaintiff's claim rather than an affirmative defense, plaintiff might well have to "prove up" his allegations by submitting his evidence to adversary testing and credibility challenges at a pretrial hearing. But plaintiff does not bear the burden of proof as to exhaustion, even when he has assumed and satisfied the burden of production as to the practical unavailability of administrative remedies. Albino, 747 F.3d at 1172. An evidentiary hearing is only necessary where summary judgment is denied on grounds that material factual disputes preclude the entry of summary judgment.

Hammler v. Davis, Case No. 2:14-cv-2073 MCE AC P, 2017 WL 735737, at *1 (E.D. Cal. Feb. 23, 2017), report and recommendation adopted, 2017 WL 1093968 (E.D. Cal. Mar. 23, 2017). As administrative exhaustion is an affirmative defense, and the evidence presented on summary judgment must be viewed in the light most favorable to the nonmoving party, the record in this case demonstrates that Defendants have failed to meet their burden on the exhaustion issue. Albino, 747 F.3d at 1176. Accordingly, summary judgment on the issue of exhaustion should be entered *sua sponte* for Plaintiff.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be denied, and the issue of exhaustion be entered in favor of Plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

///
///
///

11

may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 13, 2021**

UNITED STATES MAGISTRATE JUDGE